**TELEPHONE AND DATA SYSTEMS, INC., and United States Cellular Corporation, Appellants,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Louisiana CGSA, Inc., Intervenor.**

Nos. 92–1291, 92–1294.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1993.

Decided March 29, 1994.

Arthur V. Belendiuk, Washington, DC, argued the cause for appellant La Star Cellular Telephone Co. With him on the briefs were Gary S. Smithwick, Robert W. Healy, Washington, DC, and Shaun A. Maher, Alexandria, VA.

Alan Y. Naftalin, Washington, DC, argued the cause for appellant Telephone and Data Systems, Inc., and U.S. Cellular Corp. With him on the briefs was Herbert D. Miller, Jr.

Roberta L. Cook, Counsel, F.C.C., Washington, DC, argued the cause for appellee. With her on the brief were Renee Licht, Acting Gen. Counsel at the time the brief was filed, F.C.C., Daniel M. Armstrong, Associate Gen. Counsel, and John E. Ingle, Deputy Associate Gen. Counsel, F.C.C. Sue Ann Kanter, Counsel, F.C.C., entered an appearance.

L. Andrew Tollin, Washington, DC, argued the cause for intervenor Louisiana CGSA, Inc. With him on the brief was Luisa L. Lancetti.

Before WALD, EDWARDS, and SENTELLE, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Telephone and Data Systems, Inc. ("TDS"), United States Cellular Corp. ("USCC") and La Star Cellular Telephone Co. ("La Star") appeal an order of the Federal Communications Commission ("FCC" or "Commission"). The Commission sustained dismissal of La Star's application for a "Block B" cellular telephone license covering the St. Tammany Parish, Louisiana service area. *See La Star Cellular Tel. Co.,* 7 FCC Rcd 3762 (1992), *aff'g La Star Cellular Tel. Co.,* 6 FCC Rcd 6860 (1991).

Under FCC rules, Block B cellular frequencies are issued only to applicants who currently provide land-line telephone service in the proposed service area. *See* 47 C.F.R. § 22.902(b) (1993). In the event of corporate subsidiaries, this "wire-line eligibility" is satisfied only if the applicant is under the "control" of a wire-line eligible entity. *See Montgomery Indep. Cellular Tel. Co.,* 4 FCC Rcd

2323, 2324–25 (1989). If an applicant for a Block B cellular license is not wire-line eligible, the application may be dismissed as a threshold matter and not slated for actual comparative consideration. *See Advanced Mobile Phone Serv., Inc.*, 93 FCC 2d 683, 692 (1983).

La Star Cellular is organized as a joint venture, fifty-one percent of which is owned by SJI Cellular, Inc.[1] The remaining forty-nine percent interest in La Star is held by Star Cellular Telephone Company, which is a wholly-owned subsidiary of USCC.[2] Star Cellular purchased the minority share in La Star in 1987 from Maxcell Telecom Plus, Inc.

In its May 31, 1990 order, the FCC designated the applications of New Orleans CGSA, Inc. and La Star for comparative hearing.[3] *See Order Designating Applications for Hearing*, 5 FCC Rcd 3286, 3289–90 (1990). In response to NOCGSA's petition to deny La Star's application, the Commission also designated the following threshold qualification issues:

1) to determine whether SJI maintains control over the decisions of La Star in connection with the prosecution of the captioned application;

2) to determine whether SJI maintains control over its proposed cellular system;

3) to determine whether Star is in *de facto* control of La Star;

4) to determine, in light of the evidence adduced under the foregoing issues, whether La Star is eligible to apply for Block B frequencies.

*Id.* at 3289.

On November 25, 1991, the administrative law judge dismissed La Star's application on the ground that La Star was not under the control of SJI, the wire-line eligible carrier. *See La Star Cellular Tel. Co.*, 6 FCC Rcd at 6885–88. The administrative law judge evaluated the issue of control using the criteria set forth in *Intermountain Microwave*, 24 Rad.Reg. (P & F) 983, 984 (1963). Those criteria examine:

1) Who controls daily operations?

2) Who determine[s] and carries out the policy decisions, including preparing and filing applications with the Commission?

3) Who is in charge of employment, supervision and dismissal of personnel?

4) Who is in charge of the payment of financing obligations?

5) Who receives monies and profits derived from the operation of the facilities?

6) Does the eligible party have unfettered use of all facilities and equipment?

*La Star*, 6 FCC Rcd at 6887–88 (citing *Intermountain*, 24 Rad.Reg. (P & F) at 984).

On June 15, 1992, the FCC issued a decision affirming the order of the administrative law judge. *See La Star*, 7 FCC Rcd 3762 (1992). However, the Commission stated that "the criteria set forth in *Intermountain Microwave*, which refer to the control of an operating facility, have less relevance here than in some other cases," *La Star*, 7 FCC Rcd at 3767 n. 13 (internal citation omitted), and then proceeded to analyze the issue of whether SJI retained control over La Star using an amalgam of FCC precedent which includes some but not all of the *Intermountain* factors. *See id.* at 3764 (citing *WWIZ, Inc.*, 36 FCC 561, 579 ¶ 3 (1964); *Data Transmission Co.*, 44 FCC 2d 935, 936 (1974); *News Int'l, PLC*, 97 FCC 2d 349, 355–56 ¶ 16 (1984)). In *WWIZ*, the Commission stated that manifestations of control within the meaning of § 310 of the Communications Act included

---

**1.** SJI Cellular, Inc. is a wholly-owned subsidiary of SJI, Inc. SJI, Inc. is, in turn, the parent company of Lafourche Telephone Co., Inc., a local exchange telephone company providing land-line telephone service in a portion of the New Orleans market.

**2.** USCC is a corporate subsidiary of TDS. Both were permitted to intervene before the Commission below on the issue of control and are parties to this appeal.

**3.** NOCGSA was merged into Louisiana CGSA, Inc. ("LCGSA") while these proceedings were pending before the Commission. *See La Star Cellular Tel. Co.*, 7 FCC Rcd 3762, 3768 n. 22 (1991). LCGSA intervenes in the instant appeal. However, since the Commission's order refers to NOCGSA rather than LCGSA, we will continue to refer to it under its former name to avoid confusion.

"preparation and processing of corporate minutes; processing and filing of reports and applications with the Commission; review of advertising contracts of the station; payment of salaries to employees of the station; and amortization of debts owed by the station," as well as keeping the station's books, controlling the station's checking accounts and scrutinizing the station's receipts and expenditures.

*Peoria Community Broadcasters, Inc.,* 7 FCC 2d 311 (1980) (quoting *WWIZ* ) (internal citation omitted). In *Data Transmission,* the Commission stated that contractual provisions that grant a minority shareholder power to veto certain corporate transactions did not signal the existence of control per se, but could indicate control if combined with investor participation in the affairs of the corporation. *See generally Data Transmission,* 44 FCC 2d 935 (1974). In *News International,* 97 FCC 2d 349 (1984), the FCC noted that "there is no precise formula by which all factors can be evaluated when confronted with questions of transfer of control," *id.* at 355, but that the chief factor to consider is a " 'demonstration of ... power to dominate the management of corporate affairs.' " *Id.* (quoting *Benjamin L. Dubb,* 16 FCC 274, 289 (1951)). The FCC emphasized that "influence and control are not the same. The influence must be to the degree that a minority shareholder is able to 'determine' the licensee's policies and operation, or 'dominate' corporate affairs." *Id.* at 356.

For the reasons substantially set forth in our opinion in *Telephone & Data Systems, Inc. v. FCC,* 19 F.3d 42 (D.C.Cir.1994) (*"Ellis Thompson"*), we are unable to determine whether the Commission has acted in a manner consistent with its prior precedents in concluding that SJI Cellular was not in control of La Star. First, we find inadequate the Commission's explanation why the *Intermountain* test was not the proper standard by which to gauge control. The justification offered by the FCC for not using the *Intermountain* criteria is that they are typically applied only to operating licensees, rather than applicants. However, the cases upon which the Commission expressly relied are equally subject to this observation, since those control criteria are typically applied to existing licensees as well.

It may be that the Commission's terse explanation is intended to convey the idea that the documentation of an inchoate licensee is insufficiently specific to allow findings as to whether or not the applicant meets certain of the *Intermountain* criteria. For example, as there are no "facilities and equipment" of which SJI can make "unfettered use," *see Intermountain,* 24 Rad.Reg. (P & F) at 984, the FCC may be saying that it has no way to make a determination. However, it may be that the documentation of the licensee is sufficient to make a reasonable projection on that criterion and that the FCC has only arbitrarily failed to do so. On the present record, we cannot say. We therefore deem the FCC's present explanation to be "intolerably mute" rather than "tolerably terse" on the reasons for its rejection of the *Intermountain* factors in the present case. *Action for Children's Television v. FCC,* 821 F.2d 741, 746 (D.C.Cir. 1987). Thus on remand, the FCC might reach the same conclusion, but if it is to be sustained, that decision must be based on a reviewable, reasonable explanation.

Second, we find the FCC's application of the control criteria it did choose to consider inexplicable in light of its application of those same criteria in *Ellis Thompson.* As one illustration, the FCC in *Ellis Thompson* did not find that the licensee had relinquished control under *Intermountain* factor three, despite the fact that the licensee prepared *none* of the proposed applications or papers to be filed with the FCC and instead merely reviewed, executed and forwarded such documents. See 19 F.3d at 49–50. In *La Star,* the Commission stated that "the preparation and prosecution of La Star's application provides the *most probative basis* to evaluate the control of La Star," 7 FCC Rcd at 3765 (emphasis added), and found "particularly evident" "deficiencies in La Star's showing" because the minority shareholder participated in the preparation of the 1987 amendment to La Star's application. *Id.* at 3765–66.

The Commission's piecemeal picking and choosing of "relevant" control criteria, and its uneven application of those criteria, is not "reasoned decisionmaking, but the very sort of arbitrariness and capriciousness we are empowered to correct." *Ellis Thompson,* 19 F.3d at 50. We accordingly vacate the Commission's order and remand for further proceedings in accordance with our decision in that case.

*It is so ordered.*